## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR S. FOLK, | : | Civil No. 3:22-cv-599 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants | : | |

### MEMORANDUM

Plaintiff Omar S. Folk ("Folk"), an inmate in the custody of the Federal Bureau of

Prisons ("BOP"), initiated this action pursuant to the Federal Tort Claims Act ("FTCA"), 28

U.S.C. § 1346[1], and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[2]

(Doc. 1).  On September 6, 2022, Defendants filed a motion to dismiss the original

complaint or, in the alternative, for a more definite statement.  (Doc. 28).  On May 3, 2023,

the Court granted the motion and afforded Folk the opportunity to file an amended

complaint.  (Docs. 68, 70).  On May 12, 2023, Folk filed his amended complaint.  (Doc. 73).

Therein, he names the following Defendants: The United States of America, Brian

Buschman, M.D., Elizabeth Stahl, M.D., and Thomas Cullen, D.O.  Presently before the

---

[1]   The Federal Tort Claims Act allows plaintiffs to seek damages from the United States for certain torts committed by federal employees.  28 U.S.C. §§ 1346(b), 2674.

[2]   In *Bivens*, the Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers.

Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rules of

Civil Procedure 12(b)(1) and (b)(6) or, in the alternative, for summary judgment pursuant to

Federal Rule of Civil Procedure 56. (Doc. 93). For the reasons set forth below, the Court

will grant Defendants' motion.

## I.    Statement of Undisputed Facts[3]

Folk is a federal inmate who was housed at the United States Penitentiary,

Allenwood, Pennsylvania ("USP-Allenwood"), from November 22, 2013 to December 15,

2016. (Doc. 94 ¶ 1). On December 15, 2016, Folk was transferred to the Federal

Correctional Institution, Allenwood, Pennsylvania ("FCI-Allenwood"). He was then

transferred to the Federal Correctional Institution, Schuylkill, Pennsylvania ("FCI-Schuylkill")

on September 26, 2022. (Id. ¶ 3). Folk is currently confined at the Federal Correctional

---

[3]    Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil
Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered
paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF
COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material
facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying
genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from
Defendants' Rule 56.1 statement of material facts. (Doc. 94). Folk's two-page responsive fact statement
(Doc. 100) does not contain any numbered paragraphs and fails to correspond to the sixty-seven-
paragraph concise statement of material facts filed by Defendants (Doc. 94). The averments of Folk's
responsive fact statements are entirely independent of those in Defendants' filing and does not correlate in
any meaningful way to the paragraphs in Defendants' statement. In sum, Folk's document does not comply
with Local Rule 56.1's requirement of parity between the two filings. Therefore, as authorized by Local
Rule 56.1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. See
LOCAL RULE OF COURT 56.1 ("All material facts set forth in the statement required to be served by the
moving party will be deemed to be admitted unless controverted by the statement required to be served by
the opposing party."); see also Rau v. Allstate Fire & Cas. Ins. Co., 793 F. App'x 84, 87 (3d Cir. 2019)
(upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under
Local Rule 56.1); Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District
Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as
well as the appropriate sanction for such noncompliance").

Institution, McKean, Pennsylvania.  *See* BOP Inmate Locator, available at:

https://www.bop.gov/inmateloc/ (last accessed January 22, 2024).

On July 9, 2014, Folk began taking ranitidine (Zantac) as recommended by the

gastroenterologist for treatment of a chronic duodenal ulcer.  (Doc. 22-1 ¶ 5; Doc. 94 ¶ 12).

In November 2019, the Food and Drug Administration issued a voluntary recall of ranitidine.

(*Id.* ¶ 13).  On November 25, 2019, Folk's treatment providers substituted famotidine at an

equivalent dose.  (*Id.* ¶ 14).

On August 9, 2019, Folk was seen by a dietitian for a nutrition assessment, and

Folk was unable to verbalize his diet and nutrition concerns even upon direct questioning.

(*Id.* ¶¶ 17-18).  Folk underwent an extensive workup, with no conclusive evidence of a

gastroenterology issue.  (*Id.* ¶ 19).

On September 1, 2020, Folk underwent a computed tomography ("CT") scan of his

abdomen and pelvis due to a history of microscopic hematuria (blood in urine), during which

a small umbilical hernia containing abdominal fat was seen.  (*Id.* ¶ 22).  On May 21, 2021,

Folk underwent another CT scan with no abnormalities seen.  (*Id.* ¶¶ 24-25).

On April 7, 2021, when Folk was seen by gastroenterology, it was noted that he

underwent testing for basic food allergies in 2019, and the study was unremarkable.  (*Id.* ¶

27).  Folk requested an esophago-gastro-duodenoscopy ("EGD"), but it was not

recommended because he reported he was able to manage his symptoms by avoiding

triggering foods.  (*Id.* ¶ 29).

On January 6, 2022, Folk was treated by a nephrologist for a six-month follow up for proteinuria (elevated protein in the urine). (*Id.* ¶ 30). Folk reported to the nephrologist he had been feeling good. (*Id.*). The nephrologist reviewed Folk's recent lab results and noted that there was no evidence of kidney disease and he had only a very slight amount of protein in his urine. (*Id.* ¶¶ 31-32). The nephrologist recommended bloodwork and a urinalysis, and a follow-up with nephrology in six months. (*Id.* ¶¶ 33-34).

On June 16, 2022, Folk underwent bloodwork, as recommended by the nephrologist. (*Id.* ¶ 35). At that time, medical staff also attempted to obtain a urine specimen to complete the urinalysis recommended by the nephrologist, but Folk refused. (*Id.* ¶¶ 36-37). The bloodwork results were all within normal limits. (*Id.* ¶ 38).

During a visit with a provider on May 31, 2022, Folk reported that he was having difficulty swallowing and at times it felt like food was getting stuck in his throat. (*Id.* ¶ 39). Folk described having similar problems in the past. (*Id.* ¶ 40). The provider noted a prior medical history of cholecystectomy in 2017 and abdominal pain, duodenal ulcers, and esophagitis. (*Id.* ¶ 41). Folk had previously been worked up for Helicobacter pylori ("H.pylori") and celiac disease, both of which were negative. (*Id.* ¶ 42). A consultation request was submitted for gastroenterology. (*Id.* ¶ 43).

On September 26, 2022, Folk was transferred to FCI-Schuylkill. (*Id.* ¶ 3). Folk was seen on October 13, 2022, and staff resubmitted a request for an EGD based on his continued complaints of food getting stuck in his throat. (*Id.* ¶ 51). On October 20, 2022,

4

Folk was against treated by medical staff and his medical concerns were discussed, labs ordered, and consultation requests for urology and nephrology were submitted. (*Id.* ¶ 52).

On March 29, 2023, Folk requested to be seen for complaints of frequent urination. (*Id.* ¶ 53). He was seen by urology on April 3, 2023. (*Id.* ¶ 54). Labs were ordered with a renal ultrasound and a return consultation visit submitted. (*Id.* ¶ 55).

On April 17, 2023, Folk underwent an upper gastrointestinal endoscopy. (*Id.* ¶ 56). The results showed four esophageal ulcers, which were biopsied. (*Id.* ¶ 57). The exam was otherwise normal. (*Id.*). The physician recommended that Folk resume his previous diet, continue his present medications, take Prilosec (omeprazole) twice daily, and undergo a follow-up EGD. (*Id.* ¶ 58). The recommendations were entered as suggested, and the results were reviewed with Folk on April 25, 2023. (*Id.* ¶¶ 59-60).

Defendants contend that Folk has frequently been non-compliant with recommended treatment. (*Id.* ¶¶ 6-8). On March 16, 2021, Folk signed a refusal for naphazoline/pheniramine (eye drops for allergies). (*Id.* ¶ 7). On April 28, 2021, he refused his famotidine (reflux esophagitis), docusate (constipation/irritable bowel syndrome), and acetaminophen (knee pain, lumbar spine sprain) medications. (*Id.*). On May 5, 2022, he refused his levothyroxine (hypothyroidism) and losartan (high blood pressure) medications. (*Id.*). On June 7, 2022, Folk's primary care physician had a discussion with him regarding the potential risks and complications associated with his refusal of these medications. (*Id.* ¶

8).  At that time, Folk was instructed to notify Health Services staff if he reconsidered his

decision and wished to begin taking the medications again.  (*Id.* ¶ 9).

On April 28, 2023, Folk returned his omeprazole prescription to Health Services and

reported that he did not want to take them.  (*Id.* ¶ 61).  He returned the entire 120 pills

initially dispensed.  (*Id.* ¶ 62).  On May 10, 2023, the prescription for omeprazole was

rewritten as recommended by the gastroenterologist and was updated with the non-

formulary authorization on May 19, 2023.  (*Id.* ¶¶ 63-64).  As of May 23, 2023, Folk did not

pick up his prescribed omeprazole.  (*Id.* ¶ 64).

Defendants maintain that, at no time has it been recommended that Folk follow a

special diet for treatment of his symptoms, and he continues to be non-compliant with all

recommended treatment plans.  (*Id.* ¶¶ 66-67).

Defendant Dr. Buschman is a commissioned officer of the United States Public

Health Service and currently serves as the Clinical Director for FCC-Allenwood.  (*Id.* ¶ 4).

Dr. Buschman received his commission on September 4, 2015.  (*Id.* ¶ 5).

## II.   *Legal Standards*

### A.   **Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an action for

lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Motions brought under Rule

12(b)(1) may present either a facial or factual challenge to the court's subject matter

jurisdiction.  *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In

reviewing a facial challenge under Rule 12(b)(1), the standards associated with Rule

12(b)(6) are applicable. *See id.* In this regard, the court must accept all factual allegations

in the complaint as true, and the court may consider only the complaint and documents

referenced in or attached to the complaint. In a factual challenge to the court's subject

matter jurisdiction, the court's analysis is not limited to the allegations of the complaint, and

the presumption of truthfulness does not attach to the allegations. *Mortensen v. First Fed.*

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider

evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve

any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d

Cir. 1997).

Once the court's subject matter jurisdiction over a complaint is challenged, the

plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891. If

a dispute of material fact exists, "the court must conduct a plenary hearing on the contested

issues prior to determining jurisdiction." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281,

290 (3d Cir. 2006); *see also Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200

(3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an

opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to

support his claim of jurisdiction (citation omitted)).

**B.    Federal Rule of Civil Procedure 12(b)(6)**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct.  1955, 167 L. Ed. 2d 929 (2007).  The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted).  A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint:  First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth.  Finally, where there are well-pleaded
factual allegations, a court should assume their veracity and then determine
whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged - but it has not show[n] - that the
pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks
omitted).  This "plausibility" determination will be a "context-specific task that requires the
reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court
must permit a curative amendment unless such an amendment would be inequitable or
futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a
defendant moves to dismiss it, unless the district court finds that amendment
would be inequitable or futile, the court must inform the plaintiff that he or she
has leave to amend the complaint within a set period of time.

*Id.*

## C.      Federal Rule of Civil Procedure 56

Through summary adjudication, the court may dispose of those claims that do not
present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a).  "As to materiality,
. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Discussion

Defendants move to dismiss, or seek summary judgment, on the following grounds: (1) Defendants, in their official capacities, are shielded by sovereign immunity on the *Bivens* claim; (2) Defendant Dr. Buschman is a member of the United States Public Health Service and is entitled to statutory immunity on the *Bivens* claim; (3) a *Bivens* remedy is not available for Folk's Eighth Amendment claim; (4) Defendants are entitled to qualified immunity on the *Bivens* claim; (5) the FTCA claim lodged against the individual Defendants must be dismissed because the United States is the only proper Defendant in a FTCA action; and (6) Folk failed to state a FTCA negligence claim. (*See* Doc. 97). The motion is

ripe for resolution.[4]  The Court will first address the *Bivens* claim before turning to the FTCA claim.

### A.    *Bivens* Claim

A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action.  *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975).  To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law.  *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

### 1.  Official Capacity Claims Against the Individual Defendants

Defendants argue first, and correctly, that Folk's *Bivens* claim against the individual Defendants in their official capacities is barred by sovereign immunity.  (Doc. 97, pp. 23-24). Sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity.  *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994).  Moreover, "[a]n action against government officials in their official capacities constitutes an action against the United States" and is therefore also "barred by sovereign immunity, absent an explicit waiver."  *Lewal v. Ali*, 289 F. App'x 515,

---

[4]    Folk's brief in opposition to Defendants' motion contains factual allegations that are not expressly set forth in the amended complaint.  (*See* Doc. 101).  The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief.  *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

516 (3d Cir. 2008) (nonprecedential); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007)

(nonprecedential).  And *Bivens* does not waive sovereign immunity with respect to claims

brought against federal employees sued in their official capacities.  *See Corr. Servs. Corp.*

*v. Malesko*, 534 U.S. 61, 72 (2001).  Thus, to the extent Folk attempts to assert a *Bivens*

claim against the individual Defendants in their official capacities, that claim is barred by

sovereign immunity and will be dismissed for lack of jurisdiction.  *See Lewal*, 289 F. App'x at

516; *Webb*, 250 F. App'x at 471.

### 2.  The Public Health Service Act Precludes Suit against Dr. Buschman

Folk sets forth claims against Defendant Dr. Buschman based on his treatment of

Folk while housed at FCC-Allenwood.  (*See* Doc. 73).  Defendant Buschman is a

commissioned officer of the United States Public Health Service and serves as the Clinical

Director for FCC-Allenwood.  (Doc. 94 ¶ 4).  He was commissioned on September 4, 2015.

(*Id.* ¶ 5).  Under the Public Health Service Act, the exclusive remedy for personal injury

damages resulting from the performance of medical functions by any officer or employee of

the Public Health Service while acting within the scope of their office or employment is a suit

against the United States pursuant to the FTCA.  *See* 42 U.S.C. § 233(a).  Section 233(a)

thus "grants absolute immunity to [Public Health Service] officers and employees for actions

arising out of the performance of medical or related functions within the scope of their

employment by barring all actions against them for such conduct."  *Hui v. Castaneda*, 559

U.S. 799, 806 (2010).  Thus, the Public Health Service Act precludes suit against Defendant

Dr. Buschman, and he is entitled to dismissal from this action.

### 3.  A *Bivens* Remedy is Available for Folk's Claims

Defendants next move to dismiss Folk's deliberate indifference claim on the basis

that there is no *Bivens* remedy available for this Eighth Amendment claim following the

United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843

(2017).  (Doc. 97, pp. 25-39).  In *Bivens*, the Supreme Court recognized an implied

damages remedy for a Fourth Amendment violation committed by federal officials, whose

conduct was not encompassed by the statutory remedy available against state actors under

42 U.S.C. § 1983.  *See Bivens*, 403 U.S. at 397.  Since that decision, the Supreme Court

has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under

the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248-49

(1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual

Punishment Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 18-23

(1980).

The *Abbasi* decision invoked by Defendants sets forth a two-part test for determining

whether a prospective *Bivens* claim may proceed.  First, courts must ascertain whether the

case presents a "new context."  *Abbasi,* 582 U.S. at 138.  If the case differs "in a meaningful

way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new."

*Id*. at 139.  And the meaning of "new context" is "broad."  *See Hernandez v. Mesa*, 589 U.S.

___, 140 S. Ct. 735, 743 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See id.* This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *See Egbert v. Boule*, 596 U.S. 482 142 S. Ct. 1793, 1798 (2022) (quoting *Abbasi*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See id.* (quoting *Hernandez*, 140 S. Ct. at 743) (internal quotation marks omitted); *Hernandez*, 140 S. Ct. at 743.

In *Egbert*, 596 U.S. 482, the Supreme Court reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional…recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *Egbert*, 596 U.S. at 483 (quoting *Abbasi*, 137 S. Ct. at 1843; *Hernandez*, 140 S. Ct. at 742-43). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* at 492. In other words: if there is "*any* rational reason (even one) to think that Congress is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *Id.* at 496. The court must broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or potentially yes, the plaintiff

15

cannot recover under *Bivens*. *See id.* (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)). Here, the Court's analysis begins and ends with step one of *Abbasi*'s two-step analysis—whether Folk's deliberate indifference to a serious medical need claim presents a new context under *Bivens*.

Of the three cases in which the Supreme Court has recognized *Bivens* claims, only *Carlson*—involving an Eighth Amendment claim for failure to provide medical care—is relevant to the instant matter. In *Carlson*, the Court recognized an implied damages remedy under *Bivens* when prison officials' failure to provide medical care led to a prisoner-plaintiff's death. *See Carlso*n, 446 U.S. at 16, 25, 100 S.Ct. 1468; *see also Egbert*, 596 U.S. at 490-91. The Court concludes that Folk's Eighth Amendment medical indifference claim falls squarely within the context of *Carlson*, as it concerns the alleged deliberate indifference of prison officials to Folk's serious medical needs. A longstanding *Bivens* remedy exists as to this class of medical claim, although as discussed below, the Court finds that this claim fails on the facts of this case.

Folk's claims do not present a new factual context which would trigger further analysis under *Ziglar* and its progeny. *See Shorter v. United States*, 12 F.4th 366, 372 (3d Cir. 2021) ("If a case does not present a new *Bivens* context, the inquiry ends there, and a *Bivens* remedy is available") (citation omitted). Because the Court has determined that this case does not present a new *Bivens* context, Defendants' motion will be denied on this ground.

### 4. Qualified Immunity Analysis

As the Court has determined that a *Bivens* cause of action is available for Folk's
Eighth Amendment claim, the question remains whether Defendants are entitled to qualified
immunity.

In certain situations, "government officials are protected from *Bivens*…suits by
qualified immunity." *Couden v. Duffy*, 446 F.3d 483, 492 (3d Cir. 2006). To overcome the
defense of qualified immunity, a plaintiff must plausibly "allege facts showing that the
conduct of each individual federal defendant (1) 'violated a statutory or constitutional right,
and (2) that the right was 'clearly established' at the time of the challenged conduct.'"
*George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (quoting *Ashcroft v. Al-Kidd*, 563 U.S.
731, 735 (2011)). However, the Court need not undertake its inquiry in that order. *Pearson
v. Callahan*, 555 U.S. 223, 236 (2009). The United States Supreme Court explained that
qualified immunity protects "all but the plainly incompetent or those who knowingly violate
the law." *Ziglar*, 582 U.S. at 152 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine whether a right is "clearly established," the Court asks whether "it
would be clear to a reasonable officer that his conduct was unlawful in the situation he
confronted." *Couden*, 446 F.3d at 492 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).
This inquiry requires the Court to look at "the specific context of the case," rather than
defining the constitutional right "as a broad general proposition." *Mullenix v. Luna*, 136 S.
Ct. 305, 308 (2015). "'If the officer's mistake as to what the law requires is reasonable,' the

17

officer is entitled to qualified immunity." *Couden*, 446 F.3d at 492 (quoting *Saucier*, 533 U.S. at 205).

### a. Claims against Defendant Stahl

To be plausible, a *Bivens*-based claim must allege personal involvement by the named defendant. *See Pressley v. Beard*, 266 Fed. App'x 216, 218 (3d Cir. 2008). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Liability under § 1983 and *Bivens* is personal in nature and attaches only where the defendant's personal involvement in the alleged wrongful conduct is shown through specific allegations of personal direction or actual knowledge and acquiescence. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Liability "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode*, 845 F.2d at 1207).

With respect to Defendant Stahl's supervisory role as Clinical Director, "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago*, 629 F.3d at 129

18

n.5 (quotation and alteration marks omitted).  In the amended complaint, Folk alleges that Defendant Stahl "cosigned" a test result.  (Doc. 73, p. 5).  There are no factual averments relating to Defendant Stahl in the body of the amended complaint.  (*See* Doc. 73). Completely absent from the amended complaint are allegations that Defendant Stahl established and maintained a policy, practice or custom which directly caused the constitutional harm, or that she participated in violating Folk's rights, directed others to violate them, or acquiesced in any unconstitutional conduct by her subordinates.  The Court finds that Folk's federal constitutional claims against Defendant Stahl fail for want of personal involvement and she is entitled to dismissal from this action.

### b.  Deliberate Indifference to Medical Needs

Folk has asserted a *Bivens* claim for deliberate indifference to serious medical needs in violation of his Eighth Amendment rights.  In particular, Folk contends that Defendants were deliberately indifferent to his serious medical needs by failing to order appropriate tests.

For the delay or denial of medical care to rise to an Eighth Amendment violation, a prisoner must demonstrate: "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious."  *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety."  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Deliberate indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).  A "failure to provide adequate care . . . [that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Here, Folk's claims rely solely on his own lay opinion regarding the proper course of treatment for his gastrointestinal condition, and on a purely conclusory allegation that he has been denied that course of treatment.  Folk does not contend that he was denied treatment altogether—he routinely undergoes imaging studies and blood work, he is enrolled in various chronic care clinics, and is treated by several specialists—but merely

that he did not receive the treatment that he desired when he wanted it. Specifically, Folk has been referred for treatment with specialists in gastroenterology, nephrology, urology, and nutrition. He underwent a CT scan of his abdomen and pelvis, a renal ultrasound, upper gastrointestinal endoscopies, and regularly undergoes blood testing and urine testing. Moreover, the uncontroverted record demonstrates that Folk has refused treatment, signed refusals for medications, disobeyed medical orders, and discontinued and returned medications without justification. (Doc. 94 ¶¶ 6-10, 37, 61-67). The mere fact that an outside medical specialist recommended a certain treatment, and prison doctors opted to attempt another treatment first (*see* Doc. 101, p. 11), does not amount to deliberate indifference. *See Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir. 2013). Folk has failed to demonstrate anything more than a difference of opinion between himself and his prison doctors with respect to the appropriate course of treatment. Accordingly, the Court will grant summary judgment in favor of Defendants and against Folk with respect to the Eighth Amendment *Bivens* claim for deliberate indifference to serious medical needs. Given that Folk cannot show that the Defendants' actions or inactions rose to the level of a constitutional violation, they are protected from liability by qualified immunity.

## B.    FTCA Claim

### 1. The United States is the only Proper Party

It is well-settled that the only proper defendant for claims brought under the FTCA is the United States of America, and not a federal agency sued in its own name or individual

federal employees sued in their official capacities. *See CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008); *Dambach v. United States*, 211 F. App'x 105, 108 (3d Cir. 2006). Consequently, the Court will dismiss the FTCA claim against the individual Defendants, and, in turn, address the FTCA claim against the United States, the proper Defendant subject to Folk's FTCA claim.

### 2. Merits of the FTCA Negligence Claim

The United States asserts that Folk's negligence claim must be dismissed because the BOP did not breach a duty owed to Folk, and the conduct of BOP staff was not the proximate cause of any injury. (Doc. 97, pp. 53-57).

The FTCA waives the sovereign immunity of the United States for torts of federal employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674 (providing that, for tort claims, the United States shall be liable "in the same manner and to the same extent as a private individual under like circumstances"); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700 (2004) (stating that "[t]he FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Defendants liable in tort as a private individual would be under like circumstances'" (quoting *Richards v. United States*, 369 U.S. 1, 6 (1962))). As this provision makes clear, in conjunction with the jurisdictional grant over

FTCA cases in 28 U.S.C. § 1346(b), the extent of the United States' liability is generally determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992). In this case, the allegedly tortious conduct occurred in Pennsylvania. Thus, the Court refers to Pennsylvania tort law to assess the extent of the United States' potential liability on Folk's claim.

Under Pennsylvania law, in order to "establish a cause of action for negligence, the plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Northwest Mutual Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *Pittsburgh Nat'l Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. Ct. 1994)). In accordance with this standard, a plaintiff bears the burden of proving by a preponderance of the evidence that the defendant's negligence was the proximate cause of his injury. *Skipworth v. Lead Indus. Ass'n*, 690 A.2d 169, 172 (Pa. 1997). Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury alleged. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978).

Assuming that Folk has established that Defendants had a duty of care and breached that duty, there is no evidence that their failure to provide care caused Folk any harm. As set forth above, the record confirms that Folk received extensive treatment for his ailments. There is no evidence reflecting that the alleged failure to treat caused Folk any harm, particularly because the evidence reveals that Folk has been noncompliant with

23

recommended treatment and testing and refused prescribed medications.  The Court will grant summary judgment in favor of the United States on Folk's FTCA negligence claim for failure to state a claim upon which relief may be granted.

## IV.    Leave to Amend

The Third Circuit Court of Appeals requires district courts to grant leave to amend before dismissing a civil rights complaint for failure to state a claim, unless amendment would be inequitable or futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002); *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  The Court finds that amendment would be futile for several reasons.  First, amendment cannot remedy the jurisdictional and legal defects that the Court has identified in Folk's amended complaint; these defects are incapable of being cured by an amended pleading.  Second, to the extent other problems with Folk's pleading are factual in nature, the Court has already granted Folk leave to amend his initial complaint, and he has failed to remedy the deficiencies in his claims.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (when prisoner plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile").  The Court will dismiss Folk's pleading without further leave to amend.

## V.   Conclusion

Based on the foregoing, the Court will grant Defendants' motion to dismiss, or, in the alternative, for summary judgment.  (Doc. 93).

A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 22, 2024